**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1715-16T1

EVELYN L. AIKEN,

     Plaintiff-Appellant,

v.

DANIEL J. PYO, M.D.,
BARRY EFROS, M.D.,
BETH BLANCHARD, R.N.,
NANCY JENSEN, R.N.,
CHRISTINE CARPENTER,
R.N., JOYCE KUCEROVY,
R.N, and BEBE LI, R.N.,

     Defendants-Respondents,

and

CAREY DOLGIN, M.D.,

     Defendant.

_____

         Argued December 11, 2018 – Decided September 12, 2019

         Before Judges Suter and Geiger.

         On appeal from the Superior Court of New Jersey, Law
         Division, Morris County, Docket No. L-1705-15.

Evelyn L. Aiken, appellant, argued the cause pro se.

Renee Jean Sherman argued the cause for respondent Daniel J. Pyo, M.D. (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; Renee Jean Sherman and Michael Joseph Di Leo, on the brief).

Walter F. Kawalec, III argued the cause for respondent Barry Efros, M.D. (Marshall Dennehey Warner Coleman & Goggin, attorneys; Walter F. Kawalec, III, on the brief).

Priya R. Masilamani argued the cause for respondents Beth Blanchard, R.N., Nancy Jensen, R.N., Christine Carpenter, R.N., Joyce Kucerovy, R.N., and Bebe Li, R.N. (Cocca & Cutinello, LLP, attorneys; Anthony Cocca and Katelyn E. Cutinello, of counsel and on the brief).

PER CURIAM

Plaintiff Evelyn L. Aiken appeals the November 18, 2016 order that dismissed her medical malpractice complaint with prejudice for failure to serve an affidavit of merit. Plaintiff's malpractice complaints,[1] filed in July 2015 against three doctors and five nurses,[2] alleged that an ulcerative sore on her left

---

[1] Although plaintiff filed separate complaints against each individual defendant, defendant Pyo advised in his brief that the complaints were consolidated for management purposes under one docket number. We were not provided with this order. Hereafter, we refer to her complaints as just one complaint.

[2] Defendants include: Daniel J. Pyo, M.D., a plastic surgeon; Carey Dolgin, M.D., a board certified general surgeon; Barry Efros, M.D., a board certified

ankle was misdiagnosed because of the absence of medical testing, and that it then was negligently treated. She developed sepsis, and her leg developed gangrene, which she attributed to defendants' malpractice. Her left leg was amputated below the knee.

As plaintiff did not provide defendants with an affidavit of merit, we agree her medical malpractice complaint was properly dismissed. This case does not present facts that would exempt plaintiff from the affidavit of merit requirement based on common knowledge. And, neither her own personally created affidavit of merit nor her complaint satisfied the Affidavit of Merit statute, N.J.S.A. 2A:53A-26 to -29, because of her "financial interest in the outcome of the case under review[.]" N.J.S.A. 2A:53-27. We affirm the dismissal of plaintiff's malpractice complaint.

I

Plaintiff's complaint alleged that she was treated from May 20, 2013 to July 8, 2013 for a "small ulcer (0.7 cm)" on her left ankle. She was rushed to the hospital on July 13, 2013, "with sepsis which led to gangrene which necessitated amputation of [her] left leg." It is her contention that the ulcer—

---

rheumatologist; Beth Blanchard, R.N.; Nancy Jensen, R.N.; Christine Carpenter, R.N.; Joyce Kucerovy, R.N.; and Bebe Li, R.N.

treated as venous in origin—was in fact arterial, and that the treatment provided, consisting of debridement and compression, was not appropriate for an arterial ulcer. She alleged that defendants deviated from appropriate standards by failing to use "aseptic techniques," prescribe "prophylactic antibiotics," take a "culture of the wound," perform Doppler studies, or take "ankle brachial pressure index" (ABI) readings and by treating her with debridement and compression dressings without knowing her ABI values. In a letter submitted with her complaint, she alleged that "pre-lab" tests were not performed, Drs. Pyo and Efros did not consult with each other on her behalf, "HBO" therapy was not done and there was not a "thorough assessment of [her] circulatory status before beginning treatment." She claimed her rheumatologist, Dr. Efros, did not monitor her while she was being treated for the leg ulcer. She claimed tests taken at the hospital showed this was an arterial ulcer.

Plaintiff alleged the nurses "failed to perform the nursing process, . . . by not swabbing [her] leg to test for infection" although she claimed she asked whether her leg was infected on July 8, 2013. She claimed they should have asked the doctors for antibiotics.

A-1715-16T1

Plaintiff submitted her own affidavit of merit against the doctors and nurses when she filed her complaint. At the Ferreira[3] conference in October 2015, the court advised plaintiff she was not allowed to file her own affidavit because she had a "financial stake in . . . this case" and that she needed a person who was "independent." The court explained the time frames needed to satisfy the statute, and that if she did not comply, her case could be dismissed with prejudice. It clarified that the person providing the affidavit against the doctors had to practice in the same specialty. The exceptions from the affidavit of merit requirement were described. Plaintiff was given deadlines to meet, but advised the court she had already "contacted over sixty attorneys" and "couldn't get one."

Between June 2015 and November 2016, plaintiff claimed she contacted 140 medical experts, but could not obtain an affidavit of merit against the doctors or nurses. When she was in court in February 2016 opposing a motion to dismiss on statute of limitations grounds, the court reminded her of the statutory deadline and that she still had time to comply. Despite this, no affidavit of merit was filed.

---

[3] See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55 (2003) (providing for "an accelerated case management conference" to address affidavit of merit issues). See also R. 4:5B-4.

Defendants Efros, Dolgin and Pyo filed separate motions to dismiss plaintiff's complaint with prejudice because plaintiff had not filed an affidavit of merit. Plaintiff opposed the motions based on the common knowledge exemption, claiming she had satisfied this because the defendant doctors failed to conduct any diagnostic tests prior to treatment. She argued the ABI was the "gold standard that should be done and no ulcer should be treated without it." She claimed defendant Pyo ordered tests for an earlier leg ulcer, but had not done so this time. She complained that Dr. Efros should have ordered tests because of another medical condition she had. The tests he did order on June 27, "did not have anything to do with [her other medical condition] at the time." She argued the nurses did not "swab" her leg on July 8, 2013, even though she asked them if the wound was infected.

The trial court dismissed the case against the doctors with prejudice.[4] The court rejected application of the common knowledge exception, concluding that the average lay person would not have:

> the background, the knowledge or the information to know whether the various tests for which [plaintiff] advocates should have been administered, either at the time of her hospitalization or at some time leading up to that. Whether there was in fact a misdiagnosis. And

---

[4] Drs. Pyo and Dolgin were dismissed on May 13, 2016. Dr. Efros was dismissed on May 26, 2016.

generally speaking whether the defendant physicians departed from any—from an applicable standard of care in their various fields of rheumatology, surgery and plastic surgery.

The court concluded "plaintiff must show that her complaint is meritorious by obtaining an affidavit from an appropriate medical expert attesting to the reasonable probability of professional negligence." Because one was not provided within 120 days of the doctors' answers, the court dismissed plaintiff's complaint against defendant doctors with prejudice.

A few days later, defendant nurses filed a motion to dismiss, also based on the lack of an affidavit of merit. Plaintiff opposed the motion based on the common knowledge exception. She also argued she qualified as an expert herself as a registered nurse (R.N.) and licensed practical nurse (L.P.N.). In her view, defendants did not perform a subjective or objective nursing assessment, and no testing was done.[5] She claimed she contacted 138 "affidavit of merit representatives" without success.

On November 18, 2016, the court dismissed defendant nurses with prejudice. It rejected application of the common knowledge exception because the allegations against the nurses were "technical," requiring expertise about the

---

[5] Plaintiff also alleged that the record of the July 8, 2013 visit was altered because it referred to "amputation" which did not occur until July 17, 2013.

standard that applied, whether there was a deviation from the standard of care and whether the deviation was proximately related to damages. It observed "that a lay person . . . would not know what appropriate nursing care would be." As such, plaintiff was required to serve an affidavit of merit, but had failed to do so. The court rejected plaintiff's request that it construe her complaint as an affidavit of merit. It was not a sworn statement and it did not state there was a reasonable probability the "care, skill or knowledge exercised" was outside accepted professional standards.[6]

On appeal, plaintiff raises the following issues:

> To prove my claims of Medical Malpractice by a preponderance of the evidence. I will discuss the errors of omission and commission and how the three doctors and five nurses deviated from their standard of care while treating my left leg ulcer.
>
> I.    Trial Judge Robert J. Brennan erred when he did not accept my request for the Common Knowledge Exception.
>
> II.    I will prove that the substandard medical care that I received was so overtly erroneous that, a Jury of peers, who possesses reasonable knowledge, is quite capable of discerning the medical negligence.

---

[6] After the dismissal orders, plaintiff's motion to extend discovery was denied as was her motion for transcripts and a stay pending appeal. Indigency status was granted. Her two motions to correct the record were granted on September 27, 2017 and November 17, 2017. We denied her motion to relieve her of transcript costs.

III.  I will prove that doctors are required to order tests while treating any type of wound, especially leg ulcers.  I will prove that doctors get sued for not performing diagnostic tests.

## II

"Whether plaintiff's complaint is exempt from the [affidavit of merit] requirement based on the common knowledge doctrine is a legal issue subject to our de novo review."  Cowley v. Virtua Health Sys., 456 N.J. Super. 278, 287 (App. Div. 2018), certif. granted, 236 N.J. 363 (2019).  Where a legal question is at issue, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A plaintiff in a professional malpractice case seeking damages must file an affidavit of merit.  The Affidavit of Merit statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within [sixty] days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of merit from an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside professional or occupational standards or treatment practices.  The court may grant no more than one

9

additional period, not to exceed [sixty] days, to file the affidavit pursuant to this section, upon a finding of good cause.

[N.J.S.A. 2A:53A-27.]

The failure to comply with these standards "shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29.

The purpose of the statute is for the plaintiffs "to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of the litigation." Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 421 (2010) (quoting In re Petition of Hall, 147 N.J. 379, 391 (1997)). The statute "is consistent with the general requirement that expert testimony is required to establish the standard of care, which is an essential element of a plaintiff's professional negligence claim." Cowley, 456 N.J. Super. at 288.

Plaintiff contends the trial court erred by rejecting her argument that she did not have to comply with the affidavit of merit requirement. She argued the malpractice claim was based on common knowledge.

The common knowledge doctrine applies "where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the

benefit of the specialized knowledge of experts.'"  Hubbard v. Reed, 168 N.J. 387, 394 (2001) (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)).  "Common knowledge cases involve obvious or extreme error." Cowley, 456 N.J. Super. at 290.  For example, in Hubbard, the defendant dentist pulled the wrong tooth.  168 N.J. at 396.  In Palanque v. Lambert–Woolley, 168 N.J. 398, 406-07 (2001), the doctor performed unnecessary surgery because he had misread two lab reports.  The doctrine also can be applied in the case of an alleged omission.  See Cowley, 456 N.J. Super. at 292 (applying the doctrine where nurses did not take action after a tube became dislodged).

The exception is to be construed "narrowly in order to avoid non-compliance with the [statute]."  Hubbard, 168 N.J. at 397.  "The basic postulate for application of the doctrine therefore is that the issue of negligence is not related to technical matters peculiarly within the knowledge of medical or dental practitioners." Chin, 160 N.J. at 470 (quoting Sanzari v. Rosenfeld, 34 N.J. 128, 142 (1961)).

We agree with the trial court that this case did not present facts warranting application of the common knowledge exception.  Plaintiff's basic contention is that the doctors needed to conduct medical tests to diagnose and treat the ulcer

and that every layperson would know this. That simply is not the case. Without expert testimony, jurors could not know whether a doctor was able to diagnose and treat a leg ulcer using their training, knowledge and experience, whether tests needed to be done, what tests those should be and when they should be conducted. All of the negligence plaintiff alleged against defendants was related to technical matters that a medical doctor or a nurse may know, but not the general layperson. The trial judge was correct not to apply the common knowledge exception.

The statute is specific about who can provide an affidavit of merit.

> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony executes an affidavit set forth in . . . [N.J.S.A. 2A:53A-41]. In all the cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for the period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.
>
> [N.J.S.A. 2A:53A-27.]

Under N.J.S.A. 2A:53A-41, the affiant who supplies the affidavit of merit in a medical malpractice case should "'be equivalently-qualified to the defendant' physician." Buck v. Henry, 207 N.J. 377, 389 (2011) (quoting Ryan v. Renny, 203 N.J. 37, 52 (2010)).

Plaintiff did not supply an affidavit of merit from any doctor with the same specialties as defendant doctors. By not doing so, she did not comply with the statute. See N.J.S.A. 2A:53A-41. Instead, plaintiff provided a document with her complaint, under her own signature, that she labeled as an affidavit of merit. Although plaintiff is a R.N., she did not have the expertise to provide an affidavit of merit against the defendant doctors. And, whether her complaint was certified or the "reasonable probability" language was included, which it was not, the complaint also did not satisfy the statute for the same reason.

Plaintiff opposed the nurses' motion to dismiss based on the same common knowledge exception. She claimed the nurses did not perform a nursing assessment, properly diagnose or treat the ulcer or alert the doctor that plaintiff questioned whether there was an infection. These allegations of negligence were technical in nature, however, and required knowledge about whether, when, where and how a nurse was to make an assessment about a leg ulcer. These were not typical matters of knowledge by laypersons; they required the

13

education, training or experience of a nurse. Expert testimony would be needed at trial to address these issues. Thus, the allegations of negligence against the nurses were not within the purview of the common knowledge exception.

Plaintiff did not serve an affidavit of merit against defendant nurses. Although plaintiff did have her own affidavit of merit, she was advised at the Ferreira conference that she was required to provide an affidavit from an independent expert. We agree that even though plaintiff is a registered nurse, she could not supply her own affidavit of merit.

The Affidavit of Merit statute provides expressly that "[t]he person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case." N.J.S.A. 2A:53A-27. We must apply this statute as plainly written. As our Supreme Court has instructed:

> We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole. It is not the function of this Court to "rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of the plain language."
>
> [DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).]

14

Plaintiff was seeking significant monetary compensation from defendants.[7] This gave her a financial interest in the outcome of this litigation and precluded her from supplying her own affidavit of merit. Permitting this would undercut the purpose of the affidavit of merit requirement because any plaintiff likely would consider their claims as being meritorious. Self-created affidavits of merit would pose no bar to frivolous cases.

After carefully reviewing the record and the applicable legal principles, we conclude that plaintiff's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] She sought $10,000,000 from each doctor and $5,000,000 from each nurse.